Filed 1/3/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B308926 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA079230) |
| v. | |
| ERNESTO MEJORADO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court for the County of Los Angeles.  Ronald S. Coen, Judge.  Reversed and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**SUMMARY**

Defendant Ernesto Mejorado is serving three terms of life without parole, plus more for various enhancements, after a jury convicted him in 2009 of the first degree murder of Raymundo Flores, and of the later first degree murders of two other victims. Only the Flores murder conviction is at issue in this appeal.

The jury found true the special circumstance allegation that defendant committed the Flores murder while engaged in a robbery. The jury could not determine whether defendant or his companion was the actual killer, but necessarily found defendant either acted with intent to kill or acted with reckless indifference to human life and was a major participant in the robbery. We affirmed the judgment on appeal. (*People v. Arceo* (2011) 195 Cal.App.4th 556 (*Arceo*).)

In 2020, defendant petitioned for resentencing under Penal Code section 1170.95. (Unidentified section references are to the Penal Code.) The trial court denied defendant's petition without appointing counsel for defendant, relying on cases holding the jury's special circumstance finding barred resentencing relief.

*People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), decided after the denial of resentencing in this case, established the trial court's failure to appoint counsel under the circumstances of this case was state law error. The question before us is whether that error was prejudicial. (*Id.* at pp. 973–974.) We conclude it was. Accordingly, we reverse the trial court's order denying defendant's petition and remand with directions to appoint counsel, issue an order to show cause, and hold the hearing described in section 1170.95, subdivision (d).

**LEGAL BACKGROUND**

In 2015 and 2016, the Supreme Court decided two cases construing the terms "major participant" and "reckless indifference to human life" for purposes of a special

2

circumstances finding. (*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).) Many cases have given extensive descriptions of *Banks* and *Clark,* as well as the United States Supreme Court cases on which they relied. (See, e.g., *People v. Wilson* (2021) 69 Cal.App.5th 665, 678–685 (*Wilson*).) Both *Banks* and *Clark* involved armed robberies and found the evidence legally insufficient to support the jury's special circumstance finding under section 190.2, subdivision (d).

In *Banks,* the defendant was not a major participant, but rather a "minor actor"—the getaway driver who did not see the shooting, had no reason to know it would happen, and could not do anything to stop it or render assistance. (*Banks, supra,* 61 Cal.4th at p. 807.) "[A] defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Id.* at p. 802.) As for the defendant's mental state, while he knew he was participating in an armed robbery, no evidence at trial "supported the conclusion beyond a reasonable doubt that [the defendant] knew his own actions would involve a grave risk of death." (*Id.* at p. 807.) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*Id.* at p. 808.)

In *Clark,* the court did not decide whether the defendant was a major participant (he had a prominent role in planning the criminal enterprise) but decided only that the evidence was insufficient to support a finding the defendant exhibited "reckless indifference to human life." (*Clark, supra,* 63 Cal.4th at pp. 613–615.) Among other things, there was only one gun, which belonged to the shooter and had only one bullet in it; the defendant was not at the scene when the murder occurred and

3

planned the robbery for a time most employees would be gone; and there was no evidence the defendant was aware the shooter had a propensity for violence. (*Id.* at pp. 618–622.)

*Banks* and *Clark* provided guidance for determining whether a defendant was a major participant (*Banks*) and exhibited a reckless indifference to human life (*Clark*), identifying several considerations, "[n]o one of [which] is necessary, nor is any one of them necessarily sufficient." (*Banks, supra,* 61 Cal.4th at p. 803; *Clark, supra,* 63 Cal.4th at p. 618.)

In *Banks,* the considerations were: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?" (*Banks, supra,* 61 Cal.4th at p. 803.) The considerations identified in *Clark* are similar.[1]

After *Banks* and *Clark,* the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.), effective January 1, 2019, amending the felony-murder rule and the natural and probable consequences doctrine for murder. The bill's purpose was "to

---

[1]    The considerations identified in *Clark* in determining reckless indifference to human life are: (1) knowledge of weapons, and use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) the defendant's knowledge of cohort's likelihood of killing; and (5) the defendant's efforts to minimize the risks of the violence during the felony. (*Clark, supra,* 63 Cal.4th at pp. 618–622.)

4

ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The new law amended the definition of malice in section 188, and narrowed the class of persons liable for felony murder in section 189. (Stats. 2018, ch. 1015, §§ 2 & 3.)

Now, "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [including robbery] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill No. 1437 also added section 1170.95, which specifies a procedure under which a person "convicted of felony murder or murder under a natural and probable consequences theory" may petition the sentencing court "to have the petitioner's murder conviction vacated" and to be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) Among the conditions that apply to such a petition is that the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)[2]

---

[2] Section 1170.95 has been amended by Senate Bill No. 775 (2021–2022 Reg. Sess.), effective January 1, 2022, to clarify that persons who were convicted of attempted murder or

5

## FACTS

### 1. The Murders in This Case

We take the facts from our opinion in 2011 affirming defendant's convictions. (*Arceo, supra,* 195 Cal.App.4th at pp. 560–561.)

"Defendants Arceo and Mejorado were members of a gang, the Krazy Ass Mexicans, as was Francisco Ramirez. Sergio Mejorado, defendant Mejorado's half brother, was a member of a different gang. These four gang members were participants in some or all of the three murders in this case. . . .

"Mejorado and Ramirez, who were good friends, lived in a converted garage adjacent to a house (the Lopez house) owned by Mejorado's grandmother, Maria Lopez. Maria Lopez lived there with her sons Adan and Ramon Lopez, and Ramon's son David Lopez. Another grandson, Tommy Lopez, also a gang member, lived elsewhere with his then girlfriend, Jessika Merrill. Defendant Arceo and codefendant's half brother, Sergio, also lived elsewhere. . . . (To avoid confusion, we refer to all of the Lopezes as well as to Sergio Mejorado by their first names.) Jennifer Sanchez and America (or Erica) San Miguel, two young women described as 'druggies,' spent a lot of time at the garage of the Lopez house with Mejorado and Ramirez.

---

manslaughter under a theory of felony murder and the natural and probable consequences doctrine may obtain the same relief as persons convicted of murder under those theories. (Stats. 2021, ch. 551, § 1, subd. (a).) The amendment also codifies certain holdings in *Lewis, supra,* 11 Cal.5th 952; reaffirms the burden of proof at a resentencing hearing; and addresses the evidence a court may consider at a resentencing hearing. (Stats. 2021, ch. 551, § 1, subds. (b)–(d).)

6

"The first murder victim was Raymundo Flores. Flores drove a green Impala with special chrome rims and electronic equipment, and there was evidence suggesting he had recently come into possession of $18,000 and that this was known to Ramirez and Mejorado. In the early morning hours of April 12, 2005, Flores was shot in the back of the head with a .380-caliber round from a semiautomatic handgun. He was found in an alley near the Lopez house and later died. That same morning, Mejorado knocked on the door of the Lopez house and, in an excited state, told his cousin, David, who had been sleeping in the living room, that 'they [(he and Ramirez)] had murdered some guy' in the alley.[3] David went back to sleep. A few hours later, when he got up to go to work, David saw a green car with expensive rims in the driveway, covered with blankets.

"The next day, Ramirez and Mejorado took the rims off the car, replaced the tires with spare tires, and took televisions and other electronic equipment from the car and put them in the house. Sanchez, one of the 'druggies,' was present, as were Tommy and his girlfriend Merrill.

"Ramirez drove away in the stripped car with Sanchez, taking the car a couple of streets away from the Lopez house. Mejorado followed with Tommy and Merrill. When Tommy and Merrill drove up, the others 'had gas on the car,' and Mejorado

---

[3] David testified defendant and Ramirez were " 'kind of panicking,' '[k]ind of like a freak mode, like they were in a rush to do things.' Mejorado told him 'they had murdered some guy.' David told the police that Mejorado asked David if he had heard a gunshot, and said, 'Man, we murdered somebody, we murdered somebody, hurry up,' and '[w]e just murdered somebody.' Mejorado grabbed some clothing and ran back out." (*Arceo, supra,* 195 Cal.App.4th at p. 565.)

7

then set it on fire." (*Arceo, supra,* 95 Cal.App.4th at pp. 560–561.)[4]

Defendant's jury found him guilty of the first degree murder of Flores; found true the allegations that a principal personally and intentionally discharged a firearm proximately causing the death of Flores (as well as the lesser firearm allegations); and found true the special circumstance allegation that defendant committed the Flores murder while engaged in a robbery. The jury could not reach a verdict on the gang allegation attached to the Flores murder count, and the court declared a mistrial on that allegation. (*Arceo, supra,* 195 Cal.App.4th at pp. 569–570.) The jury also convicted defendant of the Sanchez and San Miguel murders and of conspiracy to commit those murders.[5] (*Ibid.*)

Defendant was sentenced to three terms of life without parole, plus 50 years to life for firearm enhancements with

---

[4]    Our opinion goes on to recite the circumstances surrounding the murder of the next two victims, Sanchez and San Miguel, the two young women who were frequently at the garage of the Lopez house with defendant and Ramirez. In brief, 12 days after the Flores murder, Sergio and Arceo killed Sanchez and San Miguel. Defendant and Ramirez loaded the bodies into the trunk of David's car, and Ramirez left in the car with the bodies, which were found the next day in Tulare County, burned and unrecognizable. (*Arceo, supra,* 195 Cal.App.4th at p. 561.)

[5]    In addition to those convictions and attached firearm and gang allegations that were found true, the jury found true special circumstance allegations that San Miguel was intentionally killed because she was a witness to a crime, and that defendant committed more than one offense of murder. (*Arceo, supra,* 195 Cal.App.4th at pp. 569–570.)

respect to the San Miguel and Sanchez murders.  (*Arceo, supra,* 195 Cal.App.4th at p. 570.)

**2.      The Resentencing Petition**

In July 2020, defendant filed a resentencing petition, stating he was convicted of the first degree felony murder of Flores and could not now be so convicted because of changes to section 189.  He stated he was not the actual killer; he "did not, with the intent to kill, aid, abet, counsel, commend, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and he "was not a major participant in the felony or [he] did not act with reckless indifference to human life during the course of the crime or felony."  He requested the court appoint counsel for him.

On September 3, 2020, the trial court denied the petition, without appointing counsel or receiving briefs.  The court's minute order states that, although the jury was instructed before *Banks* and *Clark* were decided, "the felony murder special circumstance instructions utilized did require the jury to find the petitioner was either the actual killer, an aider and abettor who had the intent to kill, or an aider and abettor who was a major participant in the underlying felony who acted with reckless indifference to human life."  Further, "the jury was properly instructed as to aider and abettor liability for felony murder.  In such instance, the petitioner could still be convicted of murder under newly enacted Penal Code section 189(e).  As such, petitioner is not eligible for relief as a matter of law and the petition may be summarily denied."

Defendant filed a timely appeal from the denial of his resentencing petition.

## DISCUSSION

This case presents, first, a question that has produced a split of authority in the Courts of Appeal:  Does a pre-*Banks* and

9

*Clark* felony-murder special circumstance finding preclude a defendant from making a prima facie showing of eligibility for resentencing relief under section 1170.95?  The Supreme Court has granted review of that issue.  (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.)

The trial court here relied on two cases holding a felony-murder special circumstance finding categorically bars relief under section 1170.95:  *People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), review granted October 14, 2020, S264284 and *People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*), review granted October 14, 2020, S264033.  While their reasoning differed, both *Galvan* and *Gomez* concluded "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95."  (*Galvan,* at p. 1137; see *Gomez,* at p. 17; see also *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449, 458 [*Banks* and *Clark* merely clarified the law; the phrases "major participant" and "reckless indifference to human life" are interpreted as they are used in common parlance; and "[j]ury instructions regarding the mental state required for a felony-murder special circumstance are not defective if they do not include the *Banks* and *Clark* factors"].)

Other cases have disagreed.  These cases generally say that because the special circumstance finding was made prior to the *Banks* and *Clark* opinions, and because *Banks* and *Clark* construed the meaning of "major participant" and "reckless indifference to human life" in a significantly different, narrower manner than previously, "the factual issues that the jury was asked to resolve in [cases pre-dating *Banks*] are not the same factual issues our Supreme Court has since identified as

10

controlling." (*People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011; see *Wilson, supra,* 69 Cal.App.5th at pp. 677–678; *id.* at p. 678 ["Our examination . . . of the evolving meaning of the terms 'major participant' and 'reckless indifference to human life' convinces us that a special circumstance finding predating *Banks* and *Clark* cannot categorically bar resentencing relief under section 1170.95."]; *People v. Secrease* (2021) 63 Cal.App.5th 231, 254, review granted June 30, 2021, S268862 [*Banks* and *Clark* "placed new limits" on the meaning of "major participant" and "reckless indifference to human life"].)

We see no point in adding to the extensive analyses provided in these two lines of cases. We decide only to follow the views expressed in the *Smith* and *Torres* line, concluding only that the special circumstance finding is not a categorical bar to resentencing relief in every case as a matter of law. In resolving this case, we are guided first by *Lewis*, which resolved other issues debated in the Courts of Appeal relating to the appointment of counsel, the record of conviction, and the defendant's prima facie case. Several points are relevant.

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without

11

first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 971.)

*Lewis* also tells us that appellate opinions are generally considered part of the record of conviction but cautions that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra,* 11 Cal.5th at p. 972.)

*Lewis* found the failure to appoint counsel—as happened in this case—was state law error only, and repeated that the petitioner's allegations should be accepted as true and "the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.] [The petitioner] must therefore 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' [Citations.] More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' [Citation.]" (*Lewis, supra,* 11 Cal.5th at p. 974.)

We conclude from these principles in *Lewis* that the error in failing to appoint counsel is harmless only if we can determine that the record of conviction " ' "contain[s] facts refuting the

12

allegations made in the petition." ' " (*Lewis, supra,* 11 Cal.5th at p. 971.) On that point, we cannot say that the facts recited in our 2011 opinion establish, as a matter of law, that defendant acted with reckless indifference to human life during the course of the Flores robbery and murder, as that term has been construed in *Banks* and *Clark*, and again more recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).[6]

The facts described in our opinion establish defendant and Ramirez were close friends who lived together and were members of the same gang; defendant knew Flores had $18,000; and defendant was at the crime scene, because he later said to David Lopez, in an excited state, that " '[w]e just murdered somebody.' " There is no evidence of whether or not defendant did anything to help Flores after Flores was shot in the back of the head; we only know Flores "later died." There is a great deal of evidence about defendant's actions the morning after Flores was killed and in the days that followed, to remove valuables from the car and cover up the crimes. From all this, we may be justified in concluding defendant was a major participant in the robbery under *Banks*. But we are uncertain at this stage that our appellate opinion establishes as a matter of law that defendant acted with reckless indifference to human life during the course of the robbery.

The People contend we may infer from the evidence recited in our opinion that defendant and Ramirez "together planned the robbery *and murder* of Flores" (italics added). The People argue

___

[6]     *Scoggins* addressed whether the defendant's conduct supported a robbery-murder special-circumstance finding under *Banks* and *Clark*, and held the defendant did not act with reckless indifference to human life. (*Scoggins, supra,* 9 Cal.5th at p. 671.)

13

we may infer, from the evidence they stripped Flores's car, "that they had the tools and materials necessary to strip the car because they had planned and prepared to kill Flores and strip his car prior to the robbery"; and we may infer, from the fact Flores was shot in the back of the head, that defendant "knew that a firearm would be used in the robbery of Flores and [defendant] was aware of the dangers posed by the nature of that robbery." We are not persuaded these inferences are sufficient to establish as a matter of law that defendant intended to murder Flores or acted with reckless indifference to his life.

The People add that gang evidence supported the inference "that [defendant] was at a minimum aware of the potential danger that Flores would be killed during the robbery," and also that defendant "knew Ramirez had a propensity for violence." The People cite no basis in the record for the latter inference. As for the former, *Scoggins* tells us that "[n]otably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*Scoggins, supra,* 9 Cal.5th at p. 677.) The People cite expert evidence that the murder of Flores benefitted defendant and the gang, but the jury could not reach a verdict on the gang allegation attached to the Flores murder count.

We do not know whether defendant "use[d] or [knew] that a gun would be used during the felony." (*Scoggins, supra,* 9 Cal.5th at p. 677.) So far as we know, only one weapon was used. (See *ibid.*) We do not know if defendant had "the opportunity to restrain the crime or aid the victim" (*ibid.*)—we only know there is no evidence on the point. We do not know "the duration of the interaction between the perpetrators of the felony and [Flores]." (*Ibid.*) We do not know defendant's "knowledge of [Ramirez's] propensity for violence or likelihood of using lethal force." (*Ibid.*)

We do not know whether defendant tried "to minimize the risks of violence during the felony." (*Ibid.*)

In short, it may be that the record of conviction contains other evidence bearing on the issue, but our opinion reveals little about defendant's mental state during the course of the robbery. (See *Banks, supra,* 61 Cal.4th at p. 801 ["The defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create."]; *Clark, supra,* 63 Cal.4th at p. 617 [the mere fact that a robbery involves a gun, "on its own and with nothing more presented, is not sufficient to support a finding of reckless indifference to human life for the felony-murder aider and abettor special circumstance"].)[7]

---

[7] The People also cite our opinion in the direct appeal, where we found (in the nonpublished portion) that any error in excluding Adan Lopez's testimony—that defendant said Ramirez had shot Flores—was harmless beyond a reasonable doubt. (*People v. Arceo* (Apr. 13, 2011, B218758) [nonpub. opn.].) According to the People, we said there was overwhelming evidence "that [defendant] was at least liable as a *direct* aider and abettor in Flores's murder." (Italics added.) We did *not* use the term "direct aider and abettor," and of course the opinion predated the change in the law requiring intent to kill. (The trial court stated defendant's jury "was instructed re aiding and abetting, natural and probable consequences doctrine, malice murder and felony murder.") The People go on to imply we meant that "the evidence of [defendant's] participation in the robbery and murder of Flores was so strong that it not only showed he was a major participant in the robbery who acted with reckless indifference to life, but that he had the intent to kill Flores." That conclusion cannot properly be drawn.

15

Defendant has alleged he "did not act with reckless indifference to human life during the course of the crime or felony," and contends it is "not enough to prove two perpetrators committed a robbery, the victim was killed, and the perpetrators then acted to cover up the crime." *Lewis* tells us the court, "[i]n reviewing any part of the record of conviction at this preliminary juncture, . . . should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra,* 11 Cal.5th at p. 972.) Acknowledging *Lewis*'s caution that " 'an appellate opinion might not supply all answers' " (*ibid.*), we are not prepared to conclude the facts described in our opinion conclusively refute defendant's allegations as a matter of law. Accordingly, the trial court must issue an order to show cause and hold a hearing, in accordance with the provisions of section 1170.95, subdivision (d) then in effect.

## DISPOSITION

The order is reversed, and the cause is remanded to the trial court with instructions to appoint counsel for defendant, issue an order to show cause and hold a hearing as described in section 1170.95, subdivision (d).


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


WILEY, J.


16

**STRATTON, J., and WILEY, J., Concurring.**

We write separately to explain that we have reconsidered the position we took in *People v. Rangel* (Dec. 17, 2021, B311083) [nonpub. opn.]. That opinion held that a defendant challenging the sufficiency of a jury's special circumstance finding may do so only by filing a petition for writ of habeas corpus rather than raising the challenge in a petition filed pursuant to Penal Code section 1170.95.[1] We reasoned that such a defendant is not relying on changes in sections 188 and 189 brought about by Senate Bill No. 1437 (2017–2018 Reg. Sess.); instead such a defendant is relying on changes created by *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522.

We have since been persuaded that such a challenge via a petition brought under section 1170.95, as amended by Statutes 2021, chapter 551, section 2 (eff. Jan. 1, 2022), falls within the legislative intent of Senate Bill No. 1437. We concur that Mejorado is not ineligible as a matter of law to have his murder conviction vacated just because he has not already had his special circumstance findings overturned by way of habeas corpus. Sections 188 and 189 now engraft new elements onto felony murder—proof beyond a reasonable doubt that a defendant acted with reckless indifference to human life and was a major participant in the felony offense. The elements happen to be framed in the same language used to describe the special circumstance of section 190.2, but they are applied under narrower definitions put in place by *Banks* and *Clark* after Mejorado's conviction. Based on the record before us, it is not possible to say as a matter of law that Mejorado's murder conviction satisfies the additional elements added by sections 188 and 189 as interpreted by *Banks* and *Clark*. Mejorado is entitled

---

[1]     All further statutory references are to the Penal Code.

to the issuance of an order to show cause, an evidentiary hearing, and a determination by the trial court as to whether he is guilty of the murder of Raymundo Flores beyond a reasonable doubt notwithstanding the changes wrought to sections 188 and 189.


STRATTON, J.


WILEY, J.

2